Vanessa R. Waldref
United States Attorney
Eastern District of Washington
Caitlin Baunsgard
Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

FILED IN THE U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON
NOV 13 2024
SEAN F. McAVOY, CLERK
SPOKANE, WASHINGTON

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

UNITED STATES OF AMERICA,
Plaintiff,
v.
SOLOMON VALLE-CHAVARRIA,
Defendant.

2:24-CR-0013-MKD-1

PLEA AGREEMENT

Plaintiff United States of America, by and through Vanessa R. Waldref, United States Attorney for the Eastern District of Washington, and Caitlin Baunsgard, Assistant United States Attorney for the Eastern District of Washington, and Defendant, SOLOMAN VALLE-CHAVARRIA ("Defendant"), both individually and by and through Defendant's counsel, Matthew Duggan, agree to the following Plea Agreement:

1. Guilty Plea and Maximum Statutory Penalties:

Defendant agrees to enter a plea of guilty to Count 6 of the Indictment filed on January 17, 2024, charging Defendant with Distribution of 5 Grams or More of Actual (Pure) Methamphetamine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B)(viii), a Class B felony.

Defendant understands the following potential penalties apply:

a. a term of imprisonment of not less than 5 years up to a 40-year term;

b. a term of supervised release of not less than 4 years and up to a lifetime;

c. a fine of up to $4,000,000;

d. denial of federal benefits; and

e. a $100 special penalty assessment.

2. Supervised Release:

Defendant understands that if Defendant violates any condition of Defendant's supervised release, the Court may revoke Defendant's term of supervised release, and require Defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on post-release supervision, up to the following terms:

a. 5 years in prison if the offense that resulted in the term of Supervised Release is a class A felony,

b. 3 years in prison if the offense that resulted in the term of Supervised Release is a class B felony, and/or

c. 2 years in prison if the offense that resulted in the term of Supervised Release is a class C felony.

Accordingly, Defendant understands that if Defendant commits one or more violations of supervised release, Defendant could serve a total term of incarceration greater than the maximum sentence authorized by statute for Defendant's offense or offenses of conviction.

3. Denial of Federal Benefits:

Defendant understands that by entering this plea of guilty, Defendant is no longer eligible for assistance under any state program funded under part A of Title IV of the Social Security Act (concerning Temporary Assistance for Needy Families) or

benefits under the food stamp program or any state program carried out under the Food Stamp Act. 21 U.S.C. § 862a. Defendant also understands that the Court may deny Defendant's eligibility for any grant, contract, loan, professional license, or commercial license provided by an agency of the United States or by appropriated funds of the United States. 21 U.S.C. § 862.

4. Potential Immigration Consequences of Guilty Plea:

If Defendant is not a citizen of the United States, Defendant understands the following:

a. pleading guilty in this case may have immigration consequences;

b. a broad range of federal crimes may result in Defendant's removal from the United States, including the offense to which Defendant is pleading guilty;

c. removal from the United States and other immigration consequences are the subject of separate proceedings; and

d. no one, including Defendant's attorney or the Court, can predict with absolute certainty the effect of a federal conviction on Defendant's immigration status.

Defendant affirms that Defendant is knowingly, intelligently, and voluntarily pleading guilty as set forth in this Plea Agreement, regardless of any immigration consequences that Defendant's guilty plea may entail.

5. The Court is Not a Party to the Plea Agreement:

The Court is not a party to this Plea Agreement and may accept or reject it. Defendant acknowledges that no promises of any type have been made to Defendant with respect to the sentence the Court will impose in this matter.

Defendant understands the following:

a. sentencing is a matter solely within the discretion of the Court;

b. the Court is under no obligation to accept any recommendations made by the United States or Defendant;

c. the Court will obtain an independent report and sentencing recommendation from the United States Probation Office;

d. the Court may exercise its discretion to impose any sentence it deems appropriate, up to the statutory maximum penalties;

e. the Court is required to consider the applicable range set forth in the United States Sentencing Guidelines, but may depart upward or downward under certain circumstances; and

f. the Court may reject recommendations made by the United States or Defendant, and that will not be a basis for Defendant to withdraw from this Plea Agreement or Defendant's guilty plea.

6. Waiver of Constitutional Rights:

Defendant understands that by entering this plea of guilty Defendant is knowingly and voluntarily waiving certain constitutional rights, including:

a. The right to a jury trial;

b. The right to see, hear and question the witnesses;

c. The right to remain silent at trial;

d. The right to testify at trial; and

e. The right to compel witnesses to testify.

While Defendant is waiving certain constitutional rights, Defendant understands Defendant retains the right to be assisted through the sentencing and any direct appeal of the conviction and sentence by an attorney, who will be appointed at no cost if Defendant cannot afford to hire an attorney.

Defendant understands and agrees that any defense motions currently pending before the Court are mooted by this Plea Agreement, and Defendant expressly waives Defendant's right to bring any additional pretrial motions.

7. Elements of the Offense:

The United States and Defendant agree that in order to convict the Defendant of Distribution of 5 Grams or More of Actual (Pure) Methamphetamine, in violation of

21 U.S.C. § 841(a)(1), (b)(1)(B)(viii), the United States would have to prove beyond a reasonable doubt the following elements:

> *First*, on or about December 28, 2023, in the Eastern District of Washington, Defendant did knowingly distribute to another a mixture or substance containing methamphetamine;
>
> *Second*, the mixture or substance Defendant distributed was in fact methamphetamine; and
>
> *Third,* the mixture or substance Defendant distributed contained more than 5 grams of actual (pure) methamphetamine.

8. Statement of Facts and Stipulation:

The United States and Defendant stipulate and agree to the following: the facts set forth below are accurate; the United States could prove these facts beyond a reasonable doubt at trial; and these facts constitute an adequate factual basis for Defendant's guilty plea.

The United States and Defendant agree that this statement of facts does not preclude either party from presenting and arguing, for sentencing purposes, additional facts that are relevant to the Sentencing Guidelines computation or sentencing, unless otherwise prohibited in this Plea Agreement. The parties further agree and stipulate that this factual basis is simply a summary to support the plea, it does not contain all facts which could be proven by the United States.

The Moses Lake Police Department and Bureau of Alcohol, Tobacco, Firearms, and Explosives was investigating a drug trafficking organization operating in the Grant County, Washington area, and identified Solomon VALLE-CHAVARRIA ("S. VALLE") as a distributor of controlled substances. A confidential informant ("CI") was utilized to conduct several audio and video recorded controlled buys for S. VALLE, as well as co-defendants Paulino PORTILLO-OROZCO ("PORTILLO"), Jose Mauricio RODRIGUEZ-Sanchez ("RODRIGUEZ"), and Pedro VALLE-CHAVARRIA ("P. VALLE").

On October 29, 2023, the CI arranged to purchase 1 pound of methamphetamine from S. VALLE out of his (S. VALLE's) residence in the Moses Lake, Washington area. When the CI arrived, S. VALLE advised he only had one ounce of methamphetamine left to sell, but he was working on obtaining more. The CI purchased the ounce of suspected methamphetamine and left the area. The CI obtained a call from S. VALLE and advised that the individual who had the pound of methamphetamine was there and ready. The CI returned to S. VALLE's trailer and met with S. VALLE and PORTILLO. PORTILLO sold the CI 1 pound of suspected methamphetamine. The CI advised that PORTILLO was leaving the trailer to obtain an additional half-pound of methamphetamine to sell the CI. At approximately the same time, surveillance officers saw PORTILLO depart S. VALLE's trailer as the sole occupant of a vehicle. He drove directly to meet with a female in a parking lot, and then returned directly to S. VALLE's trailer. Once back at the trailer, the CI, S. VALLE, and PORTILLO met, and the CI purchased the additional quantity of suspected methamphetamine. The CI reported that while in S. VALLE's trailer, the CI observed a firearm and during the conversation with PORTILLO, they discussed PORTILLO having an AR-15 type firearm for sale. None of the purchased suspected methamphetamine was field-tested, as the packaging was being preserved for fingerprints. The purchased suspected methamphetamine is no longer available for testing.

On November 2, 2023, the CI contacted PORTILLO to attempt to arrange for the purchase of controlled substances. PORTILLO told the CI he / she would have to wait because PORTILLO's drug supplier was coming in from out of town. PORTILLO also told the CI the firearm he had previously offered was no longer available but reported S. VALLE was in possession of the 9mm pistol he had offered to sell. The CI contacted S. VALLE to attempt to arrange for a purchase of the 9mm pistol PORTILLO referenced. S. VALLE told the CI that he (S. VALLE) had given the firearm to his son and would need to get it back.

In mid-November 2023, S. VALLE left the area. The CI advised that in S. VALLE's absence, RODRIGUEZ (who was dating S. VALLE's daughter) was distributing drugs. The CI conducted several controlled buys of methamphetamine from RODRIGUEZ, to include on November 29, 2023 (about 4 grams), December 12, 2023 (about 60 grams), and December 20, 2023 (about 50 grams). During the December 12, 2023 controlled buy, RODRIGUEZ advised that S. VALLE was coming back to town and was going to be living with P. VALLE, who is S. VALLE's brother, at an apartment in Moses Lake. The purchased methamphetamine was sent to the Drug Enforcement Administration ("DEA") Laboratory for testing and was determined to contain approximately 154 grams of actual (pure) methamphetamine.

On December 28, 2023, the CI called S. VALLE and ordered methamphetamine. S. VALLE advised they would need to go to the source to pick it up. S. VALLE told the CI that his brother P. VALLE would go with the CI to meet the source. P. VALLE got into the CI's vehicle, and they drove to a local business. While waiting there, P. VALLE spoke to the source and told the source where they were waiting. A short time later, the source arrived and met with P. VALLE, who then returned to the CI's vehicle and provided the CI with the methamphetamine (about 50 grams). When the CI dropped off P. VALLE at his residence, P. VALLE told the CI he/she could call P. VALLE directly in the future. The purchased methamphetamine was sent to the DEA Laboratory for analysis and determined to contain 39.207 grams of actual (pure) methamphetamine.

On January 4, 2024, the CI conducted a controlled purchase of approximately ¼ pound of methamphetamine from S. VALLE in Spokane, Washington. The purchased methamphetamine was sent to the DEA Laboratory for analysis and determined to contain approximately 111.1 grams of actual (pure) methamphetamine.

9. <u>The United States Agrees:</u>

a. *Not to File Additional Charges*:

The United States Attorney's Office for the Eastern District of Washington agrees not to bring additional charges against Defendant based on information in its possession at the time of this Plea Agreement that arise from conduct that is either charged in the Indictment or identified in discovery produced in this case, unless Defendant breaches this Plea Agreement before sentencing.

b. *Dismissal of Remaining Counts*:

At the time of sentencing, the United States agrees to move to dismiss all the remaining counts alleged in the Indictment, provided Defendant does not breach the Plea Agreement.

10. <u>United States Sentencing Guideline Calculations</u>:

Defendant understands and acknowledges that the United States Sentencing Guidelines (hereinafter "USSG" or "Guidelines") apply and that the Court will determine Defendant's advisory range at the time of sentencing, pursuant to the Guidelines. The United States and Defendant agree to the following Guidelines calculations:

a. *Base Offense Level and Relevant Conduct*:

The parties agree and stipulate that more than 150 grams but less than 500 grams of actual (pure) methamphetamine, was distributed in furtherance of the criminal activity jointly undertaken by Defendant and his co-conspirators; this amount was within the scope of Defendant's agreement; this amount was reasonably foreseeable to this Defendant in connection with the conspiracy; and this Defendant's relevant conduct for sentencing purposes should be calculated based upon this amount, pursuant to USSG §1B1.3.

Therefore, the parties agree and stipulate that, his base offense level is 32. *See* USSG §2D1.1(a)(5), (c)(4); USSG §1B1.3(a).

b. *Specific Offense Characteristics*:

The United States and Defendant agree to recommend a 2-level enhancement is appropriate as Defendant possessed a firearm in connection with the offense. *See* USSG §2D1.1(b)(1). The United States and Defendant agree to recommend no additional specific offense characteristics apply. *See generally* USSG §2D1.1(b).

Defendant acknowledges he is not eligible for any relief under "safety valve" provisions as he possessed a firearm. *See* USSG §2D1.1(b)(18); USSG §5C1.2; 18 U.S.C. § 3553(f).

c. *Role Adjustments*:

The United States and Defendant agree no role adjustments apply. *See* USSG §3B1.2; §3B1.1.

d. *Acceptance of Responsibility*:

The United States will recommend that Defendant receive a three-level downward adjustment for acceptance of responsibility, pursuant to USSG §3E1.1(a), (b), if Defendant does the following:

i. accepts this Plea Agreement;

ii. enters a guilty plea at the first Court hearing that takes place after the United States offers this Plea Agreement;

iii. demonstrates recognition and affirmative acceptance of Defendant's personal responsibility for Defendant's criminal conduct;

iv. provides complete and accurate information during the sentencing process; and

v. does not commit any obstructive conduct.

The United States and Defendant agree that at its option and on written notice to Defendant, the United States may elect not to recommend a reduction for acceptance of responsibility if, prior to the imposition of sentence, Defendant is

charged with, or convicted of, any criminal offense, or if Defendant tests positive for any controlled substance.

e. *Zero Point Offender*:

Defendant acknowledges he is no eligible for this reduction as he possessed a firearm. *See* USSG § 4C1.1(a)(7).

f. *Agreement Regarding Representations to the Court*:

The United States has a duty of candor to the tribunal. If the United States and Defendant do not agree on the appropriate length of incarceration, the appropriate length or applicable terms of supervised release, and/or the correct guidelines calculations, variances, departures, and/or enhancements, the United States reserves the right to respond to any and all arguments made by Defendant, on any bases the United States deems appropriate, at all stages of this criminal case.

Defendant may make any arguments it deems appropriate, at all stages of this criminal case.

Regarding all briefing, submissions, and hearings in this criminal case, the United States and Defendant agree to the following provisions:

i. The United States and Defendant may each respond to any questions from the Court or United States Probation Office;

ii. The United States and Defendant may each supplement the facts under consideration by the Court by providing information the United States or Defendant deems relevant;

iii. The United States and Defendant may each present and argue any additional facts that the United States or Defendant believe are relevant to the Sentencing Guidelines computation or sentencing;

iv. The United States and Defendant may each present and argue information that may already be known to the Court,

including information contained in the Presentence Investigation Report;

v. The United States and Defendant may each respond to any arguments presented by the other;

vi. In order to support the United States' sentencing recommendation as set forth herein, the United States may oppose and argue against any defense argument or any recommendation for any sentence lower than the sentence recommended by the United States on any basis, including arguments for a lower offense level, a lower criminal history calculation, the application or non-application of any sentencing enhancement or departure, and/or any variance from the Guidelines range as calculated by the Court;

vii. In order to support the defense sentencing recommendation as set forth herein, Defendant may oppose and argue against any argument by the United States, or any recommendation for any sentence higher than the sentence recommended by the defense on any basis, including arguments for a higher offense level, a higher criminal history calculation, the application or non-application of any sentencing enhancement or departure, and/or any variance from the Guidelines range as calculated by the Court;

viii. The United States may make any sentencing arguments the United States deems appropriate so long as they are consistent with this Plea Agreement, including arguments arising from Defendant's uncharged conduct, conduct set forth in charges that will be dismissed pursuant to this Plea Agreement, and Defendant's relevant conduct; and

ix. Defendant may make any sentencing arguments consistent with this Plea Agreement Defendant deems appropriate.

g. *No Other Agreements*:

The United States and Defendant have no other agreements regarding the Guidelines or the application of any Guidelines enhancements, departures, or variances. Defendant understands and acknowledges that the United States is free to make any sentencing arguments it sees fit, including arguments arising from Defendant's uncharged conduct, conduct set forth in charges that will be dismissed pursuant to this Agreement, and Defendant's relevant conduct.

h. *Criminal History*:

The United States and Defendant have made no agreement and make no representations as to Defendant's Criminal History Category, which shall be determined by the Court at sentencing after the Presentence Investigative Report is completed.

11. Length of Incarceration:

The United States agrees to recommend a term of incarceration no higher than the low end of the guideline as calculated by the United States. Defendant is free to recommend any legal sentence. Defendant acknowledges he cannot be sentenced to less than 60 months, the applicable mandatory minimum.

12. Supervised Release:

The United States and Defendant each agree to recommend 4 years of supervised release. Defendant agrees that the Court's decision regarding the conditions of Defendant's Supervised Release is final and non-appealable; that is, even if Defendant is unhappy with the conditions of Supervised Release ordered by the Court, that will not be a basis for Defendant to withdraw Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or any term of Supervised Release.

The United States and Defendant agree to recommend that in addition to the standard conditions of supervised release imposed in all cases in this District, the Court should also impose the following conditions:

a. that Defendant participate and complete such drug testing and drug treatment programs as the Probation Officer directs, but not to exceed six non-treatment drug tests per month during the imposed term of supervised release; and

b. that Defendant's person, residence, office, vehicle, and belongings are subject to search at the direction of the Probation Officer.

13. Criminal Fine:

The United States and Defendant agree to recommend the Court impose no criminal fine. Defendant acknowledges that the Court's decision regarding a fine is final and non-appealable; that is, even if Defendant is unhappy with a fine ordered by the Court, that will not be a basis for Defendant to withdraw Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or fine.

14. Mandatory Special Penalty Assessment:

Defendant agrees to pay the $100 mandatory special penalty assessment to the Clerk of Court for the Eastern District of Washington, at or before sentencing, pursuant to 18 U.S.C. § 3013.

15. Payments While Incarcerated:

If Defendant lacks the financial resources to pay the monetary obligations imposed by the Court, Defendant agrees to earn money toward these obligations by participating in the Bureau of Prisons' Inmate Financial Responsibility Program.

16. Additional Violations of Law Can Void Plea Agreement:

The United States and Defendant agree that the United States may, at its option and upon written notice to the Defendant, withdraw from this Plea Agreement or modify its sentencing recommendation if, prior to the imposition of sentence,

Defendant is charged with or convicted of any criminal offense or tests positive for any controlled substance.

17. Waiver of Appeal and Collateral Attack Rights:

Defendant understands that Defendant has a limited right to appeal or challenge Defendant's conviction and the sentence imposed by the Court. Defendant expressly waives his right to appeal his conviction and/or sentence.

Defendant also expressly waives Defendant's right to appeal any fine, term of supervised release, or restitution order imposed by the Court.

Defendant expressly waives the right to file any post-conviction motion attacking Defendant's conviction and sentence, including a motion pursuant to 28 U.S.C. § 2255, except one based on ineffective assistance of counsel arising from information not now known by Defendant and which, in the exercise of due diligence, Defendant could not know by the time the Court imposes sentence.

Nothing in this Plea Agreement shall preclude the United States from opposing any post-conviction motion for a reduction of sentence or other attack upon the conviction or sentence, including, but not limited to, writ of habeas corpus proceedings brought pursuant to 28 U.S.C. § 2255.

18. Withdrawal or Vacatur of Defendant's Plea:

Should Defendant successfully move to withdraw from this Plea Agreement or should Defendant's conviction be set aside, vacated, reversed, or dismissed under any circumstance, then:

a. this Plea Agreement shall become null and void;

b. the United States may prosecute Defendant on all available charges;

c. the United States may reinstate any counts that have been dismissed, have been superseded by the filing of another charging instrument, or were not charged because of this Plea Agreement; and

d. the United States may file any new charges that would otherwise be barred by this Plea Agreement.

The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office.

Defendant agrees to waive any objections, motions, and/or defenses Defendant might have to the United States' decisions to seek, reinstate, or reinitiate charges if a count of conviction is withdrawn, set aside, vacated, reversed, or dismissed, including any claim that the United States has violated Double Jeopardy.

Defendant agrees not to raise any objections based on the passage of time, including but not limited to, alleged violations of any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment.

19. Integration Clause:

The United States and Defendant acknowledge that this document constitutes the entire Plea Agreement between the United States and Defendant, and no other promises, agreements, or conditions exist between the United States and Defendant concerning the resolution of the case.

This Plea Agreement is binding only on the United States Attorney's Office for the Eastern District of Washington, and cannot bind other federal, state, or local authorities.

The United States and Defendant agree that this Agreement cannot be modified except in a writing that is signed by the United States and Defendant.

\\

\\

\\

Approvals and Signatures

Agreed and submitted on behalf of the United States Attorney's Office for the Eastern District of Washington.

Vanessa R. Waldref
United States Attorney

11-13-2024

Caitlin Baunsgard
Assistant U.S. Attorney

Date

I have read this Plea Agreement and have carefully reviewed and discussed every part of the agreement with my attorney. I understand and voluntarily enter into this. Furthermore, I have consulted with my attorney about my rights, I understand those rights, and I am satisfied with the representation of my attorney in this case. My attorney has advised me that by pleading guilty to the charges relevant to this Plea Agreement, as of this date deportation appears to be a virtual certainty. No other promises or inducements have been made to me, other than those contained in this Plea Agreement, and no one has threatened or forced me in any way to enter into this Plea Agreement. I am agreeing to plead guilty because I am guilty.

11-13-24

SOLOMON VALLE-CHAVARRIA
Defendant

Date

I have read the Plea Agreement and have discussed the contents of the Plea Agreement with Defendant. The Plea Agreement accurately and completely sets forth the entirety of the agreement between the parties. I have further advised my client by pleading guilty to the charges relevant to this Plea Agreement, as of this date, deportation appears to be a virtual certainty. I concur in Defendant's decision to plead

guilty as set forth in the Plea Agreement. There is no legal reason why the Court should not accept Defendant's plea of guilty.

Matthew Duggan
Attorney for the Defendant

11-13-24
Date

I hereby certify that I have read and translated the entire foregoing document to Defendant in a language with which Defendant is conversant. If questions have arisen, I have notified Defendant's counsel of the questions and have not offered nor given legal advice nor personal opinions.

Interpreter

11-13-24
Date